DeWine, J., dissenting.
*386 {¶ 28} The majority reverses the decision of the Board of Tax Appeals ("BTA") based on an isolated snippet of an expert's testimony without considering the expert's testimony as a whole. In the process, it fails to accord the factual findings and credibility determinations of the BTA the deference that they are ordinarily given by this court. In view of the entire record before us and the deference due the finder of fact, the decision of the BTA should be affirmed. Because the majority sees it otherwise, I respectfully dissent.
{¶ 29} The scope of our review in tax appeals is limited. We grant deference to the BTA's factual determinations and credibility assessments. Accel, Inc. v. Testa , 152 Ohio St.3d 262, 2017-Ohio-8798, 95 N.E.3d 345, ¶ 16. "When it reviews appraisals, the BTA is vested with wide discretion in determining the weight to be given to the evidence and the credibility of the witnesses that come before it." EOP-BP Tower, L.C.C. v. Cuyahoga Cty. Bd. of Revision , 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 9.
*378 {¶ 30} The majority is correct in rejecting HCP EMOH's argument that when valuing an assisted-living facility, an appraiser may use only apartment complexes for comparison. Comparables other than apartment complexes may be used, so long as an appraiser "exercise[s] care to isolate the value of the realty from the value of the business." Majority opinion at ¶ 14. The appraiser who testified on behalf of the county, Zach Bowyer, represented that he did exactly that. Bowyer testified that he evaluated nine assisted-living facilities to come up with a "lease coverage ratio." The ratio was derived by dividing the facilities' net operating incomes by the net lease payments for the properties. By applying the lease-coverage ratio to HCP EMOH's net operating income, Bowyer explained, he was able to isolate the amount of cash flow attributable to the real estate only-an amount that he capitalized to arrive at his valuation for the property.
{¶ 31} The BTA concluded after hearing Bowyer's testimony that "although he utilized the value of the going concern as the starting place for his analysis, Bowyer thoroughly and competently accounted for the value attributable to the assisted living facility operations to allocate the value attributable to the subject real property." BTA No. 2015-700, 2016 WL 6434046, *5 (Oct. 26, 2016).
{¶ 32} But the majority determines that the BTA's unequivocal conclusion was not supported by reliable and probative evidence. Specifically, the majority finds that the BTA's characterization of the net leases used by Bowyer to derive the *387 ratio as " 'real estate only' leases," id. at *2, was contradicted by the record. And because the majority determines, contrary to the BTA's finding, that the leases were not "real estate only" leases, it concludes that Bowyer's approach fails under the reasoning we used in Higbee Co. v. Cuyahoga Cty. Bd. of Revision , 107 Ohio St.3d 325, 2006-Ohio-2, 839 N.E.2d 385.
{¶ 33} To justify its conclusion, the majority zeroes in on a single exchange between Bowyer and HCP EMOH's counsel at the BTA hearing. When asked whether the net leases were "based on a percentage of the net operating income of the business for each of the facilities," Bowyer answered, "Correct." But this isolated snippet from the hearing transcript ought to be considered in the context of Bowyer's entire testimony.
{¶ 34} During direct examination, Bowyer described the leases he used to derive the lease-coverage ratio as "absolute net" leases-that is, "the landlord owns the real estate and they collect rent from the tenant for operating their business out of the real estate." Bowyer continued, "So this is simply, you know, absolute net real-estate only, lease transactions."
{¶ 35} Later in cross-examination-after the snippet of testimony on which the majority hangs its hat-Bowyer again made clear that the leases reflected the real-estate value, not the business value. He analogized the leases he had used to the rent collected by an owner of an industrial building:
[Bowyer:] * * * And there's a completely separate owner of that real estate that owns the warehouse and the real estate, and they lease the building to [the company operating a business] to conduct their business out of.
However, they have no ownership or any involvement unless they're getting a percentage rent or an overage rent or something like that, which they typically don't, and it's not going to be the case here, but they get a rent that represents the ownership of their real estate.
*379 Q. Except in this case it's not based-your scenario would be based on the business of-the net operating income of [the company operating a business] in that-
A. But the owner of the real estate is getting none of that business money.
Q. Okay. But in this scenario, they are.
A. No, they're not.
Q. They have to be, because the bottom line is everything is derived from the income and the expenses of the business.
*388 A. No, that is not accurate.
(Emphasis added.)
{¶ 36} And once more during redirect examination, Bowyer made explicit that the leases were "rent only" leases:
Q. * * * One final question. These leases on page 79, and I think this is pretty clear already, but let's just make sure, these do not include any [furniture, fixtures, and equipment].
A. Correct.
Q. Okay. And these would not include any income from the business that the tenant generates.
A. Absolutely not.
(Emphasis added.)
{¶ 37} To the extent that parts of Bowyer's testimony conflicted, it was the BTA's role, not ours, to determine whether his explanation was credible. The BTA credited his explanation, finding that "Bowyer's appraisal is a more reliable indication of value for the subject property" than the appraisal of HCP EMOH's expert. 2016 WL 6434046 at *5.
{¶ 38} Given the BTA's findings, the approach used by Bowyer was not fatally flawed like the one we analyzed in Higbee , 107 Ohio St.3d 325, 2006-Ohio-2, 839 N.E.2d 385. Rather than factoring in the business's value, as the appraiser did in Higbee , id. at ¶ 41 and 44, Bowyer took pains to isolate the real-estate value from the business value.
{¶ 39} The BTA's finding regarding the leases was amply supported by the record. I would afford our customary deference to the BTA's findings and affirm its decision.
French and DeGenaro, JJ., concur in the foregoing opinion.